**UNITED STATES of America**

v.

**Francisco Martin DURAN, Defendant.**

**Crim. No. 94–447 (CRR).**

United States District Court,
District of Columbia.

March 20, 1995.

A.J. Kramer, Federal Public Defender, Washington, DC, argued the case for defendant. With him on the briefs was Leigh A. Kenny, Asst. Federal Public Defender.

Eric Dubelier, Asst. U.S. Atty., Washington, DC, argued the case for the Government. With him on the briefs were Eric H. Holder, Jr., U.S. Atty., Brenda J. Johnson, and Chrisellen R. Kolb, Asst. U.S. Attys.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

Before the Court are the Defendant's Motion to Exclude Testimony of Government Witness and to Dismiss or Sever Count Four for Jencks Act Violations, along with the Government's Opposition thereto. The Court held an evidentiary hearing on said Motion on March 17, 1995, and issued an Order that day denying the same. The Order also directed counsel for both parties to file a pleading regarding whether inclusion of a limiting instruction to the jury regarding the destruction of documents is appropriate, and required counsel to submit such an instruction to the Court. This Memorandum Opinion shall set forth the Court's reasons for its ruling.

In his Motion, the Defendant claims that certain Jencks Act material [1] was destroyed in bad faith by Officer Harry Tejeda of the Secret Service, whom the Government intends to call as a witness in its case-in-chief. Officer Tejeda is also the alleged victim of forcible assault on an officer of the United States,[2] with which the Defendant is charged in Count four of the Superseding Indictment. Moreover, the Defendant asserts that an Officer Charles Wilson, also of the Secret Service, destroyed other Jencks material and that, though Officer Wilson is not on the Government's witness list, his actions inform the Defendant's claim that Officer Tejeda's destruction of a certain document was done in bad faith. Finally, the Defendant argues that a proper remedy for these alleged Jencks Act violations is exclusion of any testimony by Officer Tejeda and dismissal of the count charging assault upon him. In the alternative, the Defendant asserts that severance of Count four is a proper, though less desirable, remedy.

In Opposition, the Government argues that, although it would have been better practice to retain the document in question, there is no evidence that Officer Tejeda acted in bad faith. In addition, the Government asserts that sanctions are inappropriate, as the missing handwritten draft did not contain material evidence that is not already available to the defense, and nothing precludes the defense from calling the officers involved to inquire about the incident and the contents of the missing document.

## BACKGROUND

Officer Henry Tejeda, Lt. Tommy Taylor, Inspector Pendergast and Officer Timothy Schmidt, all of the United States Secret Service Uniformed Division, testified at the March 17, 1995 hearing.

Officer Henry Tejeda was on duty at the White House on October 29, 1994, and responded to the shooting. On November 9, 1994, Officer Tejeda prepared a handwritten summary pertaining to his actions while stationed at the White House on October 29, 1994. Officer Tejeda submitted this summary to Lt. Scott Ferguson for review, and was advised that it contained too many references to "specifics." Officer Tejeda then discarded this handwritten statement.

Officer Tejeda testified that this handwritten summary was not a complete report, but merely a draft. Moreover, the report of the October 29, 1995 shooting was the first report he had prepared as a Secret Service Officer, a position he had held for approximately three months at the time of the shooting. Previously, Officer Tejeda had served in the Marines and worked as a security guard. At no point in his prior employment had Officer Tejeda completed such an incident report.

Officer Tejeda drafted another handwritten summary for his supervisor's review. Two typed drafts of this statement were prepared and corrected by Lt. Tommy Taylor. A final typed statement was shown to Officer Tejeda. The drafts were typed by Officer Schmidt. Lt. Taylor testified that he had advised Officer Tejeda that it would be in his best interests to delete a reference in his second handwritten statement which could subject Officer Tejeda to discipline for abandoning his post while, in Lt. Taylor's view, Officer Tejeda had not abandoned his post. Accordingly, the final typewritten version of the statement did not contain any reference to Officer Tejeda's leaving his post. Officer Tejeda signed this statement and testified that, to the best of his knowledge, it was accurate and correct.

In addition, Michael Pendergast, Inspector with the United States Secret Service Uniformed Division, testified that the Secret Service has no requirement that handwritten drafts of reports be retained. Rather, it is within the discretion of the individual officers to determine whether to keep such drafts.

Finally, counsel for the Government and counsel for the Defendant stipulated that Officer Harry Wilson, if called as a witness, would testify to the matters contained the report prepared by the Office of Inspection regarding an interview with Officer Wilson. Government's Opposition at Exh. A, p. 5.

---

**1.** See 18 U.S.C. § 3500, et seq.

**2.** See 18 U.S.C. § 111(a)(1) & (b).

According to said report, Officer Wilson stated that significant changes were made to his report of the October 29, 1994 shooting, and that he signed the final statement under duress.

The Government turned over to the defense copies of all of the versions of both Officers' reports as Jencks material, and has supplied the Defendant with the entire report of the Secret Service Inspection Division with respect to the incident as possible *Brady* material.

### DISCUSSION

■ "[T]he Jencks Act does not contemplate automatic sanctions even when the material has been rendered completely unavailable through loss or destruction." *United States v. Rippy*, 606 F.2d 1150, 1154 (D.C.Cir.1979). Rather, in determining whether sanctions should be imposed for an alleged Jencks Act violation, the trial court must "weigh the degree of negligence or bad faith involved, the importance of the evidence lost, and the evidence of guilt adduced at trial, in order to come to a determination that will serve the ends of justice." *United States v. Bryant*, 439 F.2d 642, 653 (D.C.Cir. 1971). *Accord United States v. Lam Kwong–Wah*, 924 F.2d 298, 310 (D.C.Cir. 1991). "[T]he trial judge's effort must be to see that the defendant has access to previous statements of a witness to the fullest extent possible.... Whether the testimony is stricken or barred in advance, however, is in the discretion of the trial judge if eliminating the witness' testimony would restrict the search for truth rather than assist it in the instant and future cases." *United States v. Perry*, 471 F.2d 1057, 1063 (D.C.Cir.1972).

■ Here, in the exercise of its discretion, the Court finds that ends of justice would best be served by allowing Officer Tejeda to testify, and by allowing the Government to go forward with Count Four of the Superseding Indictment charging the Defendant with assault against Officer Tejeda.

First, the Court finds that the obligations mandated by the Jencks Act have been satisfied in major part in this case, as the Defendant learned of the alleged Jencks Act violations because of the discovery made available to him by the Government pursuant to that statute.

Second, the Court finds that the extent of non-compliance is in no way tantamount to bad faith, as Officer Tejeda and Lt. Taylor were highly credible witnesses who supported their accounts under vigorous cross-examination. In contrast, Officer Schmidt, who testified on direct examination that he kept drafts of both Officers' statements because he was uncomfortable with the changes made by Lt. Taylor, impressed the Court as both self-contradictory and incredible.

Although it is undisputed that Officer Tejeda's first handwritten draft report of the White House shooting incident on October 29, 1994 was not saved, it is clear from his testimony that Officer Tejeda was wholly inexperienced in the preparation of such reports and acted purely in good faith. Moreover, according Inspector Pendergast's testimony, the modifications suggested by Lt. Taylor were not inconsistent with any Secret Service policy which, at least at that time, left the decision regarding whether to retain a draft report to the individual officer's discretion. Finally, the Court has reviewed the proffered testimony of Officer Wilson pursuant to counsel's stipulation, and finds that Officer Wilson's statement does nothing to change the Court's finding that no bad faith has been shown.

■ Third, the Court cannot find that the absence of Officer Tejeda's first handwritten draft report in any way jeopardizes the Defendant's case. Rather, the documents at issue "were of such 'marginal utility' to the defense, that the failure to disclose them cannot be said to have prejudiced [the Defendant]." *United States v. Lam Kwong–Wah,* 924 F.2d 298, 310 (D.C.Cir.1991) (citation omitted). The documents merely demonstrate a dispute among the officers involved over technicalities having nothing to do with the merits of whether the Defendant attempted to murder the President of the United States, forcibly assaulted officers of the United States, possessed a firearm, injured property of the United States, carried and used a firearm during a crime of violence, or transported a firearm in interstate com-

merce. At best, the Defendant has been deprived of cumulative impeachment evidence. Indeed, as lead counsel for the Government stated, all of this has inured for the benefit of the Defendant in that his attorneys may now cross-examine Government witnesses on the basis of these technical violations.

In sum, based upon the information presented to the Court by the Defendant and the Government, as well as the testimony adduced at the hearing, the Court is compelled to conclude that, while it would have been better to have saved every attempted draft of these incident reports, the alleged Jencks Act violations are tantamount to nothing more than a technical violation of 18 U.S.C. § 3500 for which neither the exclusion of Officer Tejeda's testimony, nor the dismissal or severance of Count four, is warranted.

The *Bryant* Court did emphasize, however, that the Government must show that it has "promulgated, enforced and attempted in good faith to follow rigorous and systematic procedures designed to preserve all discoverable evidence gathered in the course of a criminal investigation." *Bryant,* 439 F.2d at 652. It appearing that the Secret Service Uniformed Division, at least at the time of the destruction of the draft reports in question, did not follow such critical procedures, the Court has directed counsel for the Government and counsel for the Defendant to submit pleadings regarding whether a missing evidence instruction to the jury is appropriate. At the March 17, 1994 hearing, counsel for the Government suggested such a remedy, and represented that the Government would be agreeable to it.