Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued November 20, 2003      Decided June 22, 2004

No. 02-3009

UNITED STATES OF AMERICA,
APPELLEE

v.

JOHN HAIRE,
APPELLANT

————

Appeal from the United States District Court
for the District of Columbia
(No. 00cr00426–01)

————

*Edward DeV. Bunn*, appointed by the court, argued the cause and filed the briefs for appellant.

*Mary B. McCord*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, *John R. Fisher*, *Elizabeth Trosman*, and *John Crabb, Jr.*, Assistant U.S. Attorneys.

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before:  SENTELLE, HENDERSON and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

SENTELLE, *Circuit Judge*:  John Haire appeals from a judgment of conviction entered upon a jury verdict of guilty of two counts of drug conspiracy in violation of 21 U.S.C. §§ 846 and 963.  He assigns errors relating to venue, discovery, and admission of evidence.  Upon review, we conclude that the district court committed no error and affirm its judgment for the reasons more fully set out below.

## I.  BACKGROUND

Appellant stood trial under an indictment charging him with one count of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846 and one count of conspiracy to import five kilograms or more of cocaine in violation of 21 U.S.C. § 963.  The evidence at trial disclosed that the investigation leading to appellant's indictment began with the arrest of Herbert Leininger in November of 1999 for offenses involving multiple kilograms of cocaine.  Leininger subsequently pleaded guilty and cooperated with law enforcement, principally giving evidence against his source, Kevin Cleary, evidence which ultimately led to the conviction of Kevin Cleary, his brother Michael Cleary, and Kevin Cleary's source Terry Colligan.  Leininger had never met appellant Haire and did not know his name, but did give information to authorities that he knew that one of Colligan's drivers (apparently Haire) was in Tampa, Florida.

The brothers Cleary thereafter followed Leininger's path and pleaded guilty under agreements to cooperate with investigators.  Kevin Cleary admitted buying cocaine from Colligan over a six-year period from 1993 to 1999 and selling it to Leininger, who transported it to the District of Columbia.  Cleary identified appellant as Colligan's partner in at least the first two years of the operation, and described appellant as the person who drove the cocaine from Mexico into the United States.  As part of his cooperation, Kevin Cleary set up a meeting with Colligan at Cleary's home.  The meeting

was audio- and video-taped and involved discussion of importing more cocaine from Mexico and Belize. Colligan was subsequently arrested and, following the by then well-established precedent, pleaded guilty and agreed to cooperate.

As part of his cooperation, Colligan provided evidence against appellant and testified for the government at his trial. According to Colligan's testimony, he met appellant in the early 1990s in Florida. In 1993, appellant visited Colligan in Cancun, Mexico, where Colligan lived, and purchased a kilo of cocaine through a source introduced by Colligan. Thereafter, Colligan and appellant packaged the cocaine. Appellant flew with it to Nuevo Laredo, Mexico, and from there transported it by car across the border into the United States and back to Tampa, Florida. This transaction was the beginning of extensive dealing in cocaine by appellant, Colligan, and others. Colligan's cooperation with authorities after his own guilty plea included tape-recording telephone conversations with appellant. The conversations addressed cocaine smuggling and eventually resulted in appellant setting up a meeting in April, 2001, between himself and an undercover detective in Florida. After that meeting, appellant was arrested and admitted to extensive drug-related criminal activity.

At trial, in addition to the cooperating defendants discussed above, the prosecution offered substantial corroborating evidence. The only evidence connecting the conspiracy with Washington, D.C. was the evidence relating to the obtaining, possession, and distribution of several kilograms of cocaine in the District by Herbert Leininger. After presentation of evidence by the defense, the district court submitted the case to the jury. The jury found defendant guilty of both counts. The district court entered concurrent sentences of 240 months incarceration followed by five years of supervised release on the two counts. Appellant brought the present appeal.

## II. ANALYSIS

Appellant alleges a plethora of errors by the district judge, lumping them under three headings: venue; discovery and

cross-examination rights; and, "inadmissable other wrongs, irrelevant and prejudicial evidence." While we have reviewed all of appellant's allegations of error, and find none of them to warrant relief, most do not require separate discussion. As to those that do, none of the assignments states a reversible error, if, indeed, any of them state error at all.

### A. Venue

Defendant first contends that venue in the District of Columbia was improper. He separately claims that there was insufficient evidence that the alleged crimes occurred in the District of Columbia. Stripped of rhetoric, these two claims are indistinguishable. On the record, they are also meritless. We note at the outset that "the government bears the burden of establishing by a preponderance of the evidence that venue is proper with respect to each count charged against the defendant." *United States v. Lam Kwong–Wah*, 924 F.2d 298, 301 (D.C. Cir. 1991). Therefore, we review the sufficiency of the evidence, doing so "in the light most favorable to the government," *id.*, as with any other sufficiency question on appeal. Appellant's argument, as we understand it, is that the government proved not one but several conspiracies; if appellant was involved in any conspiracy, it was with Colligan's roommate and had no nexus to the District of Columbia. The government counters that there is one continuing conspiracy linking the co-conspirators from their Mexico purchases to their Washington, D.C., sales and possession for sale. As to whether the evidence proved a single conspiracy or multiple conspiracies, we have held that issue "is primarily a question of fact for the jury." *United States v. Childress*, 58 F.3d 693, 709 (D.C. Cir. 1995) (internal quotation marks and citations omitted). Appellate review is "limited to whether there is sufficient evidence—when viewed in the light most favorable to the government—to support a jury finding of a single conspiracy agreed to by the individual appellants." *Id.*

The evidence at trial, taken in the light most favorable to the prosecution, supported a jury finding of what is commonly called a "chain" conspiracy.

As we have observed before, under a chain-conspiracy analysis:

> the government need not prove a direct connection between all the conspirators. A single conspiracy may be established when each conspirator knows of the existence of the larger conspiracy and the necessity for other participants, even if he is ignorant of their precise identities. When the conspirators form a chain, each is likely to know that other conspirators are required.

*United States v. Tarantino*, 846 F.2d 1384, 1392 (D.C. Cir. 1988). As we held in *Tarantino*, this Circuit's landmark decision on the subject of chain conspiracies, "[a] single conspiracy is proven if the evidence establishes that each conspirator had the specific intent to further the common unlawful objective." *Id.* More generally, the existence of such a vertically integrated, loose-knit combination may raise the inference that each conspirator had agreed with the others (some whose specific identity may be unknown) to further a common unlawful objective, e.g., distribution of narcotics. *Id.* at 1393. As in *Tarantino*, as in *Childress*, and as in other chain-conspiracy cases, the government offered evidence in Haire's trial from which a reasonable jury could find, as alleged in Count One, that such a vertically integrated loose-knit combination existed; that part of the objective of the conspiracy was to distribute drugs in Washington, D.C., and that this objective was accomplished. That said, we then recognize the "well established rule" that prosecutions for conspiracy "may be brought in any district in which some overt act in furtherance of the conspiracy was committed by any of the co-conspirators." *Lam Kwong–Wah*, 924 F.2d at 301 (citing cases) (internal quotation marks and citation omitted).

As to Count Two, the case for affirmance is even stronger. Under 18 U.S.C. § 3237(a), Congress expressly provided that, subject to exceptions not here relevant, "any offense . . . involving . . . the importation of an object . . . into the United States is a continuing offense and . . . may be inquired of and prosecuted in any district from, through, or into which such

. . . imported object moves." The "object" in Count Two is the imported cocaine, at least some of which moved into the District of Columbia. In short, appellant's argument that there was insufficient evidence of venue, more specifically, that the evidence would not support a conspiracy that involved both the defendant and the District of Columbia, does not constitute reversible error or indeed error at all.

### B.   The Failure to Instruct on Venue

Appellant also alleges error in the failure of the district court to instruct the jury on the "element" of venue. He makes no claim that he requested such instruction but offers the rather breathtaking proposition that "the government had the burden of proving venue and *requesting the jury instruction thereon.*" Appellant's Br. at 17. Certainly the government had the burden of proving venue, but this falls far short of assigning the government the burden of requesting an instruction. Undaunted by the lack of precedent, appellant asserts that "if the government fails to request the instruction and it did, and if the court fails to instruct the jury on venue and it did, the case must be reversed." *Id.* For this proposition, appellant cites *United States v. Lam Kwong–Wah*, 924 F.2d at 301–02. In that case, however, the court's discussion of the government's failure to obtain a proper jury instruction had to do with a much more discrete question than the sweeping theory advanced by appellant in the present case. In *Lam Kwong–Wah*, the government was arguing for venue on the theory that the appellant therein aided and abetted the attempted distribution of heroin that occurred in a venue with which no evidence connected him. Because the government had not advanced the aiding and abetting theory at all in the trial court, we reversed the conviction. Indeed, we expressly stated, "because the government failed to advance any such argument or proof or to obtain a proper jury instruction, we reversed Lam's conviction on the charge of attempted distribution of heroin." *Id.* at 302. No such loose end is flapping in the present case. The government charged conspiracy and offered evidence of conspiracy. The jurors were instructed on conspiracy and it is on a conspiracy theory that, the government argues, the defendant is responsible for acts that

occurred in the venue of trial. In short, the government had no duty to request such an instruction. The burden to request the instruction was the defendant's. This he did not do.

The Federal Rules of Criminal Procedure expressly prescribe in the version of Rule 30 in effect at the time of Haire's trial that:

> No party may assign as error any portion of the [jury] charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.

As the Supreme Court has repeatedly noted, this rule of procedure embodies the historic principle "that a right 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' " *Johnson v. United States,* 520 U.S. 461, 465 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 731 (1993)) (other citations omitted).

We pause for further discussion of the absence of instruction on venue only because of occasional references in case law that "venue is an element of every offense." *United States v. Perez*, 280 F.3d 318, 329 (3rd Cir. 2002) (collecting cases). *But cf. Maldonado–Revera*, 922 F.2d 934, 969 (2nd Cir. 1990) ("venue however is not an element of the offense"). There is of course considerable support for the proposition that the failure to charge on an element of the offense is error. As the Supreme Court has stated, "[t]he Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged." *United States v. Gaudin*, 515 U.S. 506, 522–23 (1995) (holding that materiality is an element of false statement prosecutions which must be submitted to the jury). That said, failure to instruct remains subject to the federal rules and, if forfeited by failure to request under Rule 30, it would be noticed by us only under the plain-error standard of Rule 52(b) which allows, "plain errors affecting substantial rights to be noticed even though

there was no objection." *Johnson*, 520 U.S. at 466. In the present record, we see no plain error, and we see no error "affect[ing] substantial rights," as a plain error must be to be reversible in the absence of a proper objection or request at trial. *Id.* at 468.

We would be cutting ourselves totally off from the reality of criminal trial-practice if we did not recall that the instructions offered daily by district courts in criminal cases typically do not detail the element of venue in the absence of a request from the defense. We will consider then the question, "When must an instruction on venue be given?" a question explored at length by the Third Circuit in *United States v. Perez, supra.* The *Perez* court first noted, as referenced above, that venue is often described as an element of every offense and that criminal defendants generally have the right to a jury determination of guilt of every element, and further noted that courts describing venue as an element "often distinguish it from 'substantive' or 'essential' elements." *Id.* at 330 (collecting cases). This makes much sense. Indeed, we agree with the Third Circuit's further observation "that while one might call venue an element, 'it is an element more akin to jurisdiction than to the substantive elements of the crime.'" *Id.* (quoting *United States v. Massa*, 686 F.2d 526, 530 (7th Cir. 1982) (other citations omitted)). We, therefore, join the Third and Seventh Circuits and hold that "although an element strictly speaking, venue does not automatically present a question for the jury." *Id.* (citing *Massa*).

The Third Circuit in *Perez* offered an educational history of the various treatments in various circuits of the necessity for instruction, that is, when the failure to instruct the jury on venue could constitute reversible error. Without recreating the excellent discussion by our fellow circuit, we refer the interested reader to that decision, *id.* at 330–35, and join in that Circuit's conclusion that the instruction is necessary only when the question of venue is genuinely in issue. We cannot improve upon that Circuit's conclusion that venue becomes a jury question and the trial court must specifically instruct the jury on venue, in cases where there is no facially-obvious

defect in the allegations of venue, when the following three conditions are met:

> (1) the defendant objects to venue prior to or at the close of the prosecution's case-in-chief, (2) there is a genuine issue of material fact with regard to proper venue, and (3) the defendant timely requests a jury instruction.

*Id.* at 334.

In the case at bar, there is no genuine issue of material fact as to the commission of acts in furtherance of the offense in the District of Columbia and the defendant did not request the venue instruction at trial. We therefore conclude that the district court did not err in failing to instruct the jury on venue.

### C. *Denial of Discovery and Cross–Examination Rights*

Again, appellant lumps a broad range of arguments under a single heading. Most of these arguments do not warrant separate discussion, but we have attempted to distill from it the most discrete contentions of appellant and will discuss them briefly. To provide the proper context, we will outline the trial court history of the discovery questions.

Before trial, appellant moved to compel discovery regarding his co-conspirators' statements, ill-gotten gains acquired by co-conspirators, and the files and notes relating to the debriefings of the cooperating witnesses. The trial court held a hearing on these motions at which the government represented that it would disclose to the defendant all information that could be used to impeach the government's witnesses two days before trial. The trial court carefully ordered, in response to a request by the defense counsel, that if any of the co-conspirators had failed to name appellant as a co-conspirator when they might have been expected to do so in the original debriefings, the government must present those to the defense, or at the least hand them over to the court for in camera inspection. The government fulfilled its promise to turn over potential impeachment materials at least two days before trial, excluding two items, which it described to the court in an ex parte submission. The court reviewed the

debriefing notes for material discoverable under the Jencks Act, 18 U.S.C. § 3500, or under *Brady v. Maryland*, 373 U.S. 83 (1963). The court found no further discoverable evidence.

### D.  *The Law of Criminal Discovery*

Discovery in criminal cases, as relevant to the present case, is largely governed by Federal Rule of Criminal Procedure 16 and the Jencks Act. Rule 16 provides that: "this rule does not authorize the discovery or inspection of . . . statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500." Fed. R. Crim. P. 16(a)(2). Section 3500, the Jencks Act, provides, in pertinent part, that: "no statement or report in the possession of the United States which was made by a Government witness or prospective government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). It further provides that after a government witness "has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statements of the witness . . . in the possession of the United States which relates to the subject-matter as to which the witness has testified." We find nothing in the appellant's argument that suggests that the United States failed to comply with the obligations imposed by the Jencks Act, the Federal Rules, or any other authority. Indeed, it appears that the prosecution in fact supplied the Jencks material before trial, a salutary practice which we commend but which is not compelled by the statute.

Of course in addition to the statutory obligations, the Supreme Court has expressly held that the Constitution requires the prosecution to disclose information that is favorable to the accused and that is material either to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83 (1963); *see also Giglio v. United States*, 405 U.S. 150, 154–55 (1972); *United States v. Bagley*, 473 U.S. 667, 676 (1985) (extending the *Brady* obligation beyond regular exculpatory evidence to evidence material to impeachment). Appellant alleges a violation of his *Brady* rights. However, he has set forth nothing

that makes out such a violation. *Brady* does not require that the prosecutor "deliver his entire file to defense counsel, but only [that he] disclose evidence favorable to the accused, that if suppressed, would deprive the defendant of a fair trial." *Bagley,* 473 U.S. at 675 (footnote omitted). On appeal, appellant has made no showing that the government suppressed either exculpatory or impeachment evidence, let alone any material raising a reasonable probability of a different result in the proceeding. We will not find error on the mere speculation that files, such as the debriefing material not disclosed herein, may contain *Brady* information. *See United States v. Williams–Davis*, 90 F.3d 490, 514 (D.C. Cir. 1996) ("It is unwise to infer the existence of Brady material based on speculation alone.") (citation omitted).

In short, we hold that appellant has established no error relating to discovery, or material made available for cross-examination. While appellant also argues that the district court erred in limiting his cross-examination, we have reviewed the cited portions of the transcript and find nothing beyond reasonable management of the progress of the trial.

*E. Evidentiary Rulings*

Haire argues that his "convictions were the result of inadmissible other wrongs, irrelevant and prejudicial evidence." He argues that the court's rulings on such evidence violated the restrictions in Federal Rule of Evidence 404(b), which renders evidence of other crimes, wrongs or bad acts not admissible to show character or action in conformity therewith. He also argues that the Court's ruling violated Rule 403, which provides that evidence, though relevant, is to be excluded if it is substantially more prejudicial than probative.

We have reviewed the cited portions of the transcript and find that most of the questioned evidence was not 404(b) evidence at all, but was in fact direct evidence of some acts connected with the conspiracy. As to that which arguably may have been covered by that rule, we find neither error nor abuse of discretion. Likewise, we see no error on the part of the district court in conducting the balancing between prejudice and relevance required by Rule 403.

### III. CONCLUSION

In sum, we find no reversible error and order that the judgment on appeal be affirmed.